Scott Humphreys (SBN 298021)
humphreyss@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350

Terence M. Grugan (*pro hac vice forthcoming*)
GruganT@ballardspahr.com
Peter D. Hardy (*pro hac vice forthcoming*)
HardyP@ballardspahr.com
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864-8320
Facsimile: 215.864.8999

*Counsel for Plaintiff*
*National Funding, Inc..*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FUNDING, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as United States Secretary of Treasury; and THE UNITED STATES OF AMERICA, <br><br> Defendants. | Case No. **'24CV1440 WQHMSB** <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701 ET SEQ |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1

## COMPLAINT

Plaintiff, National Funding, Inc. ("National Funding"), by its attorneys, as and for its Complaint against Defendants, the United States Small Business Administration ("SBA"), Isabella Casillas Guzman in her official capacity as Administrator of the SBA, Janet Yellen in her official capacity as United States Secretary of Treasury, and the United States of America, alleges as follows:

## NATURE OF THE ACTION

1.      In order to mitigate the economic devastation caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020).  Congress's purpose in adopting the CARES Act was to ensure continued employment and income for the millions of Americans employed by small businesses.  To accomplish that critical goal, Congress created the Paycheck Protection Program ("PPP"), which authorized the SBA to guarantee hundreds of billions of dollars in loans to small businesses.  PPP loans were to be made by private lenders, and Congress pledged to forgive these loans (*i.e.*, the federal government would reimburse the bank) provided that, *inter alia*, the borrowers used most of the proceeds to pay employees' wages.  *See* 15 U.S.C. §§ 636(a)(36), 9005-06.

2.      Historically the SBA has treated certain classes of businesses as ineligible for other SBA lending programs.  Aware of this, Congress purposefully set about to "[i]ncrease[] eligibility" for forgivable PPP loans, *id*. § 636(a)(36)(D), making them widely available to small businesses across the commercial spectrum. Congress did so by establishing specific, limited criteria for PPP loan guarantee eligibility and by providing unambiguously that "*any* business concern . . . *shall* be eligible" for a forgivable PPP loan if it met those criteria.  *Id.* § 636(a)(36)(D)(i) (emphases added).

3.     National Funding applied for a PPP loan on April 8, 2020.  The SBA approved the loan under the PPP's expanded eligibility criteria on April 14, 2020, and the loan was subsequently funded.

4.     Despite the CARES Act's clear direction to expand eligibility for PPP loans beyond the criteria traditionally used by SBA, the SBA adopted an Interim Final Rule, effective April 15, 2020, that imposed its pre-COVID-19, pre-CARES Act exclusions on PPP loan eligibility, excluding a wide range of businesses including entities primarily in the business of lending (the "Exclusion Rule").

5.     Although the SBA had previously published notice on its website on April 2, 2020 of its intent to issue the Interim Final Rule, it expressly noted that the Rule would become effective upon its publication in the Federal Register on April 15, 2020.

6.     This exclusion lacks any basis in, and indeed is contrary to, the plain text, purpose, and context of the CARES Act.

7.     Congress recognized that COVID-19 spared no portion of the economy and clearly and unequivocally expressed its will to provide temporary paycheck support to *all* Americans employed by *all* small businesses that satisfied the statute's eligibility requirements—even businesses that previously may have been ineligible for SBA programs during normal times.

8.     Contravening Congress's clearly expressed will, the SBA implemented the Exclusion Rule, declaring ineligible for participation in the PPP many businesses that suffered from the COVID-19 economic downturn in the same way as those that the SBA deemed eligible for their support.

9.     Having erroneously excluded entire categories of businesses, the SBA compounded its mistake by then arbitrarily eliminating that exclusion for certain types of business concerns such as casinos, which are ineligible under the traditional criteria, while maintaining the exclusion against others, including those primarily engaged in lending/financing.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

10.    To make matters worse, the SBA now applies its shifting eligibility standards to refuse to forgive loans it granted to businesses – including National Funding – that applied and were approved for PPP loans in reliance of Congress's promise of loan forgiveness *prior to SBA's adoption of the Exclusion Rule* on April 15, 2020.  Such businesses risked their financial security by keeping employees on payroll during the COVID-19 pandemic with the benefit of PPP loans they were eligible to receive at the time they applied for and SBA approved them.  Now, having done everything Congress required of them, these businesses are told that they must repay their loans because of the SBA's unlawful application of its eligibility restrictions.

11.    Moreover, the SBA now applies its shifting eligibility standards arbitrarily.  Without any explanation of its reasoning in doing so, the SBA has forgiven thousands of loans granted to purportedly ineligible businesses, but has denied forgiveness to certain businesses who are indistinguishable with respect to the eligibility criteria from businesses whose loans have been forgiven.

12.    National Funding, having retained as many employees as reasonably possible throughout the pandemic in reliance on Congress's promises embodied in the plain language of the CARES Act, applied for forgiveness of its loan.  National Funding was entitled to forgiveness of its loan because it fully held up its end of the bargain.

13.    Unfortunately, on November 30, 2021, the SBA issued a final loan review decision denying forgiveness of the entirety of National Funding's loan, claiming National Funding is ineligible for forgiveness under the Exclusion Rule. National Funding timely appealed the SBA's final loan review decision to SBA's Office of Hearings and Appeals ("OHA"), pursuant to applicable regulations.

14.    On April 12, 2023, OHA issued a decision affirming the SBA's final loan review decision, holding that National Funding "is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

factoring," and thus ineligible for forgiveness of the Loan.[1] *See* Office of Hearing and Appeals April 12, 2023 Affirmance, attached as Exhibit A ("OHA Affirmance").

15.     Under applicable regulations, the OHA's decision is now the final decision of the SBA.  National Funding has exhausted all administrative remedies and now pursues this action under the Administrative Procedure Act ("APA") to set aside the SBA's unlawful denial of forgiveness of National Funding's PPP loan and to compel the SBA to grant forgiveness of National Funding's PPP loan in full.

## PARTIES

16.     Plaintiff National Funding is a business based in San Diego, California that helps small and medium-sized businesses acquire working capital loans and equipment finance leases, primarily by serving as a broker between commercial lenders and small and medium-sized borrowers. At the time that National Funding submitted its application for a PPP loan, it employed 334 people.

17.     Defendant United States Small Business Administration ("SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq.* Under the CARES Act, the SBA administers the PPP.

18.     Defendant Isabella Casillas Guzman is the Administrator of the SBA, and is sued only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for these Administrative Procedure Act ("APA") causes of action.

19.     Defendant Janet Yellen is the Secretary of the United States Department of Treasury, and is sued only in her official capacity.

20.     Defendant United States of America is a proper defendant in APA cases. *See* 5 U.S.C. § 702.

---

[1]  Though these factual findings were incorrect because National Funding is not primarily in the business of lending, this appeal raises solely legal challenges to SBA's denial of loan forgiveness, which would have been improper even if National Funding were in the excluded category of businesses.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## JURISDICTION & VENUE

21.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

22.    National Funding has standing to seek review of the SBA's Exclusion Rule because the SBA has applied the rule to deny National Funding's loan forgiveness application.

23.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and §1402 because National Funding resides in this district and pursuant to 13 CFR § 134.1211(g), which provides that "[f]inal decisions [of the SBA] may be appealed to the appropriate federal district court only."

24.    The decision that the OHA issued on April 12, 2023 is the final decision of the SBA, and thus is a final agency action for purposes of the APA, pursuant to 13 CFR § 134.1211(b), which provides that "unless a request for reconsideration is filed pursuant to paragraph (c) of this section or the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the initial decision pursuant to paragraph (d) of this section, an initial decision shall become the final decision of the SBA 30 calendar days after its service."

## BACKGROUND

### I.    The CARES Act and the PPP

25.    In March 2020, in order to mitigate the economic crisis caused by the COVID-19 pandemic, Congress passed the CARES Act.  Title I of the CARES Act, the "Keeping American Workers Paid and Employed Act," established the PPP.  *See* CARES Act, tit. I; 15 U.S.C. § 636(a)(36).

26.    The purpose of the PPP was "to assist small businesses nationwide adversely impacted by the COVID-19 emergency by immediately extending them loans on favorable terms," *see* 85 Fed. Reg. 20811, 20811-12 (Apr. 15, 2020), by providing that a borrower's PPP loan would be forgiven "to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent,

and utilities during the eight-week period following the loan's origination," *id*. at 20,813-14.

27.     Congress created the PPP through an amendment to Section 7(a) of the Small Business Act, and delegated the administration of the PPP to the SBA.  *See* 15 U.S.C. § 636(a).

28.     Section 7(a) of the Small Business Act establishes the SBA's general business loan program, empowering the SBA to make loans "to any qualified small business concern … either directly or in cooperation with banks or other financial institutions[.]" 15 U.S.C. § 636(a).

29.     In 1996, the SBA first declared certain types of businesses ineligible to participate in its lending program. This historical regulation, codified at 13 C.F.R. § 120.110, prohibits, *inter alia*, banks, life insurance companies, "[certain b]usinesses involved in gambling activities," and political lobbying from receiving SBA-backed loans. 13 C.F.R. § 120.110(b), (d), (g), (r).

30.     Most relevant here, the historical regulation also generally excludes "[f]inancial businesses primarily engaged in the business of lending, such as . . . finance companies, and factors." 13 C.F.R. § 120.110(b).

31.     Building on its historical regulation, the SBA promulgated a "Standard Operating Procedure for Lender and Development Company Loan Programs 50 10 5(K)" ("2019 SOP"), which likewise excludes "businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring." 2019 SOP, subpt. B, ch. 2(III)(A)(2). Thus, the SBA has historically denied businesses engaged in lending access to the agency's lending programs generally.

32.     The CARES Act, however, established the PPP as "a *new* loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency" that would be administered under Section 7(a).  *See* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Reg. 20,811 (Apr. 15, 2020), codified at 13 C.F.R. § 120 (the "Interim Final Rule" or "IFR 1"). SBA's historical restrictions, therefore, did not apply.

33.     The CARES Act significantly broadened eligibility for PPP loans as follows:

(D)   INCREASED ELIGIBILITY FOR CERTAIN SMALL BUSINESSES AND ORGANIZATIONS

(i)     IN GENERAL.   During the Covered Period, *in addition to small business concerns, any business concern*, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)C) *shall be eligible to receive a covered loan if the business concern*, nonprofit organization, veterans organization, or Tribal business concern *employs not more than the greater of (I) 500 employees*; or (II) if applicable, the size standard in numbers of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization or Tribal business concern operates.

CARES Act §1102, 15 U.S.C. §636(a)(36)(D) (emphases added).

34.     15 U.S.C. § 636(a)(36)(D) sets forth the eligibility standards for a PPP loan and also sets forth the sole categorical exclusion made by Congress, rendering publicly-traded companies ineligible for a PPP Loan.

35.     Any business meeting the eligibility criteria in section 36(D) may receive a "covered loan" from a participating lender. Section 36(A)(ii) defines "covered loan" as "a loan made under this paragraph."

36.     Pursuant to 15 U.S.C. § 636(a)(36)(B), the SBA is authorized to "guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection."

37.     The criteria for loan forgiveness are also set forth in Section 1106 of the CARES Act, as amended by the Paycheck Protection Program Flexibility Act ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641 (2020). "An eligible recipient *shall* be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds are used for certain payroll expenses. CARES Act § 1106(b), (d)

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

(emphasis added); Flexibility Act § 3(b). The SBA is required to reimburse the private lender for any PPP loan determined eligible for forgiveness. CARES Act § 1106(c)(3). PPP loan recipients must submit forgiveness applications to be considered, *id.* § 1106(e), and loans may only be forgiven if the borrower was an "eligible recipient" of the PPP loan. Loans not forgiven will have a 2-year term or, for loans issued after June 5, 2020, a 5-year term. *See* Flexibility Act § 2(a), (b).

## II.     SBA Implements the Exclusion Rule

38.     In the period following the passage of the CARES Act, the federal agencies responsible for implementing the PPP touted the program as providing payroll assistance to *any* business with fewer than 500 employees.  *See, e.g.*, U.S. Dep't of Treas., *Small Business Paycheck Protection Program*, (Mar. 31, 2020) ("All Small Businesses Eligible"), https://bit.ly/372sJwp.

39.     Nonetheless, shortly after enactment of the PPP, the SBA adopted rules to govern the PPP loan guarantees, and the Exclusion Rule was one of them.  *See* IFR 1.

40.     IFR 1, incorporating by reference the Exclusion Rule, states that "[b]usinesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible."

41.     As discussed above, these SBA historical lending guidelines exclude "[f]inancial businesses primarily engaged in the business of lending," 13 C.F.R. § 120.110(b).  The 2019 SOP further states that "SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring."  2019 SOP, subpt. B, ch. 2(III)(A).

42.     Applying the Exclusion Rule to PPP lending has no statutory basis in either the CARES Act, the APA or the Small Business Act.  The Exclusion Rule does not implicate a "term, condition [or] process" of section 7(a) of the Small Business

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Act.   More specifically, the exclusion of "businesses primarily engaged in the business of lending" has no statutory basis whatsoever and none of the CARES Act, APA or Small Business Act reference "businesses primarily engaged in the business of lending."   Rather, the Exclusion Rule was crafted and implemented by the SBA pursuant to its general rule-making authority and incorporated among SBA's SOP.

43.    Since imposing the Exclusion Rule on PPP loans, the SBA has issued further guidance "clarifying" that certain businesses previously ineligible for SBA loans under its regulations are nevertheless now eligible for PPP loans.  For example, the SBA now permits legal gambling businesses, previously excluded from SBA loans under 13 C.F.R. § 120.110(g), to access PPP loans.  *See* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2020).

44.    Nevertheless, the SBA continues to enforce the Exclusion Rule against businesses like National Funding that it determines are primarily engaged in the business of lending without any explanation or justification for its differing treatment. At the time of allowing legal gambling businesses to obtain PPP loans, the SBA stated that "the Administrator . . . believes this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses."  85 Fed. Reg. at 23,451.  This reasoning applies with equal force to business primarily engaged in lending, yet the SBA has given *no* explanation for continuing to exclude these businesses from the PPP while allowing other previously excluded businesses to participate.

### III.    SBA Unlawfully Applies the Exclusion Rule to Deny National Funding the Loan Forgiveness Promised by the CARES Act.

45.    National Funding suffered significant harm from the COVID-19 pandemic, which ground nearly every segment of the economy to a halt.  Small

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

businesses were disproportionately impacted as they operate on the tightest margins and lack traditional sources of funding.

46.  National Funding bore the consequences and effects of the pandemic even more than some since their business model relies on brokering loans to small businesses throughout the country. As a direct result of statewide shutdown orders and social distancing requirements, a large percentage of National Funding's customers were no longer able to continue operations.  This caused National Funding's gross revenue to drop 30% and 56% in the second and third quarters of 2020, respectively, compared to 2019.

47.  Facing the same or worse dire economic outlook as every business in America, National Funding grappled with how to retain its employees amidst a certain economic downturn of uncertain duration.

48.  In the face of financial hardship and challenging decisions, National Funding sought a forgivable PPP loan to mitigate business losses, enable it to retain its employees through the economic downturn and keep its business open for the purpose of helping other small businesses weather the Covid storm.

49.  Under the criteria established by the CARES Act, National Funding was eligible for a PPP loan.

50.  National Funding applied for a PPP loan on April 8, 2020, through Pacific Western Bank ("Pacific Western"). The SBA approved National Funding's application on April 14, 2020, and loan proceeds were disbursed on April 21, 2020.

51.  National Funding used its loan proceeds to meet payroll and other expenses permitted by the CARES Act.  Though it experienced significant operational challenges caused by the pandemic and was forced to lay off a number of employees, National Funding nevertheless retained as many employees as it could with the assistance of its PPP loan and the recovering business environment.

52.  As it was entitled to do under the CARES Act, National Funding submitted its application for loan forgiveness to Pacific Western on December 7,

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

2020, which approved National Funding's forgiveness request and forwarded National Funding's forgiveness application to SBA for its final review.

53.    However, although National Funding's original forgiveness application demonstrated it had met all of its obligations under the CARES Act as Pacific Western recognized, the SBA requested further information from Pacific Western on July December 18, 2020, and June 9, 2021.

54.    On November 30, 2021, National Funding received the SBA's final loan review decision denying forgiveness of the Loan on the ground that it "is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring."  *See* November 30, 2021 Letter Re: Paycheck Protection Program Final SBA Loan Review Decision, attached as Exhibit B ("SBA Loan Forgiveness Denial").

55.    On December 12, 2021, National Funding filed a formal appeal of the SBA Loan Forgiveness Denial (the "OHA Appeal").

56.    On April 12, 2023 OHA issued its decision affirming denial of SBA forgiveness of National Funding's loan, holding that National Funding was ineligible for its PPP loan because it is a business primarily engaged in lending. *See* Exhibit A.

## IV.    The SBA Arbitrarily Allows Other Excluded Businesses to Obtain Forgivable PPP Loans

57.    Since imposing the Exclusion Rule, the SBA has issued further guidance "clarifying" that certain businesses previously ineligible for SBA loans under its regulations are nevertheless now eligible for PPP loans.  For example, the SBA now permits legal gambling businesses, previously excluded from SBA loans under 13 C.F.R. § 120.110(g), to access PPP loans.  *See* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program— Requirements— Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2020).

58.    Nevertheless, the SBA continues to enforce the Exclusion Rule against businesses like National Funding that it determines are primarily engaged in lending without any explanation or justification for its differing treatment.  At the time of allowing legal gambling businesses to obtain PPP loans, the SBA stated that "the Administrator . . . believes this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses." 85 Fed. Reg. at 23,451.  This reasoning applies with equal force to business primarily engaged in lending, yet the SBA has given *no* explanation for continuing to exclude these businesses from the PPP while allowing other previously excluded businesses to participate.

59.    In addition to the Exclusion Rule being unlawful as written, SBA impermissibly applies it arbitrarily against some businesses while forgiving loans granted to similarly situated businesses.

60.    According to data on PPP loans provided by SBA on its own website, more than 2,200 loans greater than $150,000 have been forgiven where the borrowers use NAICS codes beginning with 522, indicating that they are engaged in credit intermediation and related activities. *See* U.S. Small Business Administration, *PPP FOIA,* https://data.sba.gov/dataset/ppp-foia (last accessed July 31, 2024). The total amount forgiven for these loans is more than $1.6 billion. *Id.* Businesses are typically classified under NAICS code 522 when they "(1) lend funds raised from depositors; (2) lend funds raised from credit market borrowing; or (3) facilitate the lending of funds or issuance of credit by engaging in such activities as mortgage and loan brokerage, clearinghouse and reserve services, and check cashing services." United States Census Bureau, *North American Industry Classification System,* https://www.census.gov/naics/?input=522&year=2017&details=522.    The    vast majority of these businesses are excluded from PPP eligibility according to SBA's Exclusion Rule. Yet SBA has forgiven more than $1.6 billion in PPP loans granted to

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

these businesses, while inexplicably denying forgiveness to other similarly situated businesses.

61.    SBA has even forgiven PPP loans granted to businesses operating under the same NAICS code as that used by National Funding, 522310, without providing any explanation for how those businesses differ in eligibility criteria from National Funding. According to the same SBA data, 618 out of 671 loans granted to businesses with NAICS code 522310 have been forgiven. The combined forgiveness amount of these loans is $451,584. This means that SBA has forgiven 92% of loans, amounting to more than $400 million, for entities operating the same type of business as National Funding. SBA has offered no explanation for its differential treatment of National Funding.

## V.    Courts in Multiple Jurisdictions Have Held that the Exclusion Rule is Invalid.

62.    Since the SBA issued the Exclusion Rule, a number of courts have barred its application as contrary to law.  For example, the Eastern District of Michigan enjoined the SBA from denying PPP loans to otherwise-qualified applicants on the basis of the Exclusion Rule, holding that the rule exceeded the SBA's statutory authority. *Nat'l Ass'n of Home Builders v. U.S. Small Business Administration*, No. 2011780, 2021 U.S. Dist. LEXIS 186548, at *35 (E.D. Mich. Sept. 28, 2021); *see also DV Diamond Club v. Small Business Administration*, 960 F.3d 743, 746-47 (6th Cir. 2020) (denying a motion for stay of injunction barring the Exclusion Rule's application to business owners who were previously ineligible for SBA lending programs, finding that the business owners had a substantial likelihood of success on their claim that the rule conflicted with the CARES Act).

63.    Numerous other courts across the country have likewise held that the SBA's Exclusion Rule exceeds the agency's statutory authority and is arbitrary and capricious. *See, e.g.*, *Camelot Banquet Rooms*, 458 F. Supp. 3d at 1056 (holding that the SBA's Exclusion Rule exceeded its statutory authority); *Camelot Banquet Rooms*,

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Inc. v. U.S. Small Bus. Admin.*, No. 20-1729 (7th Cir. May 20, 2020) (order) (denying the SBA's motion for a stay pending appeal); *In re Gateway Radiology Consultants, P.A.*, No. 8:19-BK-04971-MGW, 2020 WL 3048197, at *19 (Bankr. M.D. Fla. June 8, 2020) (enjoining the SBA's attempt to "disqualify[] an entire class of troubled small businesses—perhaps those who need it the most— from obtaining grants to pay employees so their workers don't lose their jobs"); *In re Skefos*, No. 19-29718-L, 2020 WL 2893413, at *13 (Bankr. W.D. Tenn. June 2, 2020) ("SBA acted arbitrarily and capriciously in excluding applicants whose owners are debtors in bankruptcy from the PPP."); *In re Roman Catholic Church of Archdiocese of Santa Fe*, No. 18-13027 T11, 2020 WL 2096113, at *7 (Bankr. D.N.M. May 1, 2020) (holding that the SBA's Exclusion Rule "constitutes a usurpation of Congressional authority to determine which businesses are eligible for PPP funds").

64.     Where courts have found otherwise and upheld the Exclusion Rule, they have almost uniformly reached this conclusion by relying on the now overruled *Chevron* deference. Prior to the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, courts evaluating challenges to the Exclusion Rule have followed the two-step *Chevron* analysis, first assessing "whether congress has clearly spoken to the precise question at issue," and then, if it has not and there is ambiguity, determining "whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984). Thus regardless of whether a court disagreed with the agency's interpretation of the statute, it was required to uphold the agency action as long as the interpretation was "permissible." *See Bros. Petroleum, LLC v. United States*, 569 F. Supp. 3d 405, 410 (noting "considerable deference given to agency's construction of the statute," and that "the agency's interpretation does not have to be an inevitable one, only a permissible one").

65.     The Supreme Court resoundingly rejected this agency-friendly approach in *Loper Bright*, holding that it violates the essential principle under the constitution

1  and the Administrative Procedure Act that courts must "independently interpret the

2  statute and effectuate the will of Congress subject to constitutional limits." *Loper*

3  *Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2024 U.S. LEXIS 2882, at *37 (2024).

4        66.    This holding nullifies the reasoning of almost every case that has upheld

5  the Exclusion Rule as being within the bounds of SBA's statutory authority. These

6  cases almost uniformly hold that the CARES Act did not expressly address whether

7  the relevant category of excluded businesses would be eligible for PPP loans. *See*

8  *Diocese of Rochester v. United States SBA*, 466 F. Supp. 3d 363, 377 (W.D.N.Y.

9  2020) ("[T]he CARES Act is silent regarding the eligibility of debtors in bankruptcy

10  to participate in the PPP."); *Defy Ventures, Inc. v. United States SBA*, 469 F. Supp. 3d

11  459, 473 (D. Md. 2020) (holding that "Congress has not clearly spoken" on the

12  question of whether certain criminal history records could exclude businesses from

13  PPP eligibility). After determining that there is ambiguity in the CARES Act with

14  respect to this question, these courts have reasoned that the SBA's interpretation—

15  namely that Congress intended to permit it to exclude these businesses—is

16  permissible. *See, e.g., In re Gateway Radiology Consultants*, 983 F.3d, 1239, 1261-

17  62 (11th Cir. 2020); *DACO Invs., LLC v. United States SBA*, No. 6:22-CV-01444,

18  2024 U.S. Dist. LEXIS 33763, at *27 (W.D. La. Feb. 22, 2024); *United States SBA v.*

19  *Weather King Heating & Air, Inc.*, 648 B.R. 200, 1262 (N.D. Ohio 2023).

20        67.    Now, the Supreme Court has instructed that courts **"may not defer to**

21  **an agency interpretation of the law simply because a statute is ambiguous."**

22  *Loper Bright Enters.*, 2024 U.S. LEXIS 2882, at *62. The deference on which courts

23  have relied in determining that the Exclusion Rule was not contrary to the CARES

24  Act is therefore prohibited, rendering the cases upholding the rule's application non-

25  binding. Moreover, because these decisions were made in the context of substantial

26  deference to the agency, courts' reasoning upholding the Exclusion Rule must be

27  viewed with significant skepticism—if considered at all—because their task was to

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

conduct a favorable assessment of the agency decision, not to objectively identify the best interpretation of the law.

68.    Courts now must evaluate the legitimacy of the Exclusion Rule objectively, with no deference to the SBA. As many courts have already found, the rule cannot survive such a review.  For example, in *Nat'l Ass'n of Home Builders v. United States SBA*, the court agreed with the Sixth Circuit that *Chevron* deference was not warranted because "by specifying 'any business concern,' Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances." No. 2011780, 2021 U.S. Dist. LEXIS 1864548, at *24 (quoting *DV Diamond Club of Flint,*, 960 F.3d at 746-47).  The court distinguished *DV Diamond Club* from *In re Gateway Radiology*, where the Eleventh Circuit upheld the Exclusion Rule as it applied to debtors in bankruptcy proceedings, holding that unlike the other exclusions, the bankruptcy exclusion "was rooted in an express and co-equal statutory creditworthiness limitation" found in legislation requiring SBA loans to be made to creditworthy borrowers.  *Id.* at *26.  With respect to businesses excluded by the Exclusion Rule other than those in bankruptcy proceedings, the court held: "[The CARES Act] enunciates in no uncertain terms the criteria respecting the *types* and *sizes* of entities that may apply for PPP loans…. Any business within the specified size ranges may apply, and the SBA must lend to them." *Id.* at *28.  This decision was ultimately vacated, but only because SBA settled the litigation while an appeal was pending, and the settlement stipulated that the plaintiffs would voluntarily dismiss their case.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

17

COMPLAINT

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## CAUSES OF ACTION

### COUNT ONE
**Claim for Declaratory and Injunctive Relief Under 5 U.S.C. § 706(2)(A),(C) That The SBA Is Acting Contrary to Law by Enforcing the Exclusion Rule Against National Funding when the Rule was not in Effect when the Loan was Approved**

69.    Plaintiff repeats and incorporates the foregoing paragraphs as if fully stated herein.

70.    The APA authorizes judicial review of federal agency actions.  5 U.S.C. §702.

71.    The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. § 706(2)(A), (C).

72.    The Interim Final Rule, 85 Fed. Reg. 20,811, states explicitly that "[t]his interim final rule is effective April 15, 2020."  *See also Skefos*, 2020 Bankr. LEXIS 1479, at 17 ("The first Interim Final Rule was published on April 15, 2020.").

73.    The Interim Final Rule further provides that "SBA has drafted this rule, to the extent practicable, in accordance with the standards set forth in section 3(a) and 3(b)(2) of the Executive Order 12988, to minimize litigation, eliminate ambiguity, and reduce burden.  *The rule has no preemptive or retroactive effect*."  (emphasis added).

74.    On April 8, 2020, National Funding submitted its PPP loan application to its lender, Pacific Western.

75.    On April 14, 2020, SBA approved National Funding's PPP loan application.

76.    By the plain terms of the rule, at no point through this process was the Interim Final Rule, including its provisions adopting the Exclusion Rule, in effect and applicable to National Funding—or any applicant.  Therefore, National Funding was

eligible for its PPP loan at the time it applied for it and at the time its loan application was approved.

77.    National Funding used its PPP loan proceeds for payroll expenses and other eligible expenses under the CARES Act.

78.    The CARES Act, as amended, provides that all such "*eligible recipient[s] shall* be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

79.    Because it properly and lawfully utilized its loan proceeds, which it was eligible to receive at the time it applied for its PPP loan and at the time its loan application was approved, National Funding applied for loan forgiveness on December 7, 2020.  Its loan forgiveness application was approved by its lender, Pacific Western.

80.    However, notwithstanding National Funding being eligible for a PPP loan at the time of its loan application and the time its loan application was approved, SBA applied the Exclusion Rule to National Funding on November 30, 2021, stating in its final decision that it "had determined that [National Funding] was ineligible for the PPP loan … [because] National Funding is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring." Ex. B.

81.    After National Funding appealed SBA's Loan Forgiveness Denial, the OHA ALJ affirmed SBA's erroneous decision on April 12, 2023.

82.    Defendants' retroactive application of the Exclusion Rule to determine that National Funding was ineligible for its PPP loan is not in accordance with law, including the CARES Act, the APA and the Interim Final Rule itself.  Plaintiff is entitled to an order declaring the same.

83.    Plaintiff is entitled to a permanent injunction enjoining Defendants from retroactively applying the Exclusion Rule.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

## COUNT TWO
### Claim for Declaratory and Injunctive Relief Under 5 U.S.C. § 706(2)(A), (C) that the Exclusion Rule Is Agency Action Contrary to Law
### 5 U.S.C. §706(2)(A), (C)

84.    Plaintiff repeats and incorporates the foregoing paragraphs as if fully stated herein.

85.    The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

86.    The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. § 706(2)(A), (C).

87.    The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," CARES Act § 1102(a)(36)(D)(i) (emphases added), subject only to the conditions that a business meet the Act's size requirement, make the required good-faith borrower certification, and have been in operation as of February 15, 2020.

88.    In evaluating the enforceability of an agency rule, the Court must "independently interpret the statute and effectuate the will of Congress subject to its constitutional limits." *Loper Bright Enters.*, 2024 U.S. LEXIS 2882, at *37. The Court "may not defer to [the SBA's] interpretation of the law simply because a statute is ambiguous." *Id.* at *62.

89.    If the agency's interpretation does not align with the best interpretation of the statute, the court must give effect to the statutory language and must reject contrary administrative constructions. *Id.*

90.    Congress's deliberate use of the word "any" evinces its clear intent that the PPP shall be broadly available to all "business concerns" meeting the criteria set forth in the CARES Act. While standard 7(a) Loans are prohibited to businesses primarily engaged in the business of lending, "the 'any business concern' language

evidenced Congress's intent to render SBA's more restrictive eligibility rules inapplicable." *SBA v. Weather King Heating & Air, Inc.*, No. 5:20-cv-2711, 648 B.R. 200, 23 (N.D. Ohio Jan. 31, 2023).

91.     The CARES Act, as amended, also provides that all such "eligible recipient[s] *shall* be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses.  CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

92.     The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Exclusion Rule.

93.     Defendants' actions to exclude businesses primarily engaged in the business of lending from PPP eligibility, including for loan forgiveness, are not in accordance with law, including the CARES Act and the APA.  Plaintiff is entitled to an order declaring the same.

94.     Defendants' actions to exclude businesses primarily engaged in the business of lending from PPP eligibility, including for loan forgiveness, are in excess of statutory jurisdiction, authority, or limitations, and short of statutory right, in violation of the CARES Act and the APA.  Plaintiff is entitled to an order declaring the same.

95.     Plaintiff is entitled to a declaratory judgment that the Exclusion Rule is unlawful, and injunctive relief preventing the SBA from applying the Exclusion Rule to it.

**COUNT THREE**
**Claim for Declaratory and Injunctive relief under 5 U.S.C. § 706(2)(A)**
**that the Exclusion Rule is Arbitrary and Capricious**

96.     Plaintiff repeats and incorporates the foregoing paragraphs as if fully stated herein.

97.     The APA authorizes judicial review of federal agency actions.  5 U.S.C. §702.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

98.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

99.     The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," 15 U.S.C. § 636(a)(36)(D)(i) (emphases added), subject only to the conditions that a business meet the Act's size requirement, makes the required good-faith borrower certification, and have been in operation as of February 15, 2020.

100.    The CARES Act, as amended, also provides that all such "eligible recipient[s] *shall* be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

101.    The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Exclusion Rule.

102.    Defendants' exclusion of businesses primarily engaged in the business of financing from PPP eligibility, including loan forgiveness, while granting PPP benefits to other businesses that were ineligible under previous SBA guidelines, is arbitrary and capricious and an abuse of discretion.  Plaintiff is entitled to an order declaring the same.

103.    Plaintiff is entitled to a declaratory judgment that the Exclusion Rule is arbitrary and capricious and injunctive relief preventing the SBA from applying the Exclusion Rule to it.

### COUNT FOUR
**Claim for Declaratory and Injunctive Relief Under 5 U.S.C. § 706(2)(A) that Application of the Exclusion Rule to National Funding is Arbitrary and Capricious**

104.    Plaintiff repeats and incorporates the foregoing paragraphs as if fully stated herein.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

105. The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

106. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious," or "an abuse of discretion." *Id*. § 706(2)(A).

107. "[A]n agency must give a reasoned analysis to justify disparate treatment of regulated parties that seem similarly situated. If such disparate treatment is not supported with a reasoned explanation and substantial evidence in the record, the treatment is arbitrary and capricious and violates the APA." *DACO Invs., LLC v. United States SBA*, No. 6:22-CV-01444, 2024 U.S. Dist. LEXIS 33763 (W.D. La. Feb. 22, 2024) (internal quotations omitted) (quoting *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1024 (D.C. Cir. 2018)).

108. SBA has denied loan forgiveness to Plaintiff based on its determination that Plaintiff is a business primarily engaged in lending. According to its own data, however, SBA has forgiven loans to more than two thousand businesses with NAICS codes beginning with 522, the same three digits as National Funding's NAICS code.

109. SBA did not identify any other reason for denying Plaintiff's PPP loan forgiveness application.

110. Plaintiff and these other businesses are similarly situated with respect to eligibility for PPP loan forgiveness. Defendant's denial of Plaintiff's forgiveness application, while granting forgiveness to these other businesses, is therefore arbitrary and capricious and an abuse of discretion. Plaintiff is entitled to an order declaring the same.

111. Plaintiff is entitled to a permanent injunction enjoining Defendants from applying the Exclusion rule against it, and vacating the SBA and OHA decisions holding that Plaintiff is ineligible for loan forgiveness.

# PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully asks the Court to order the following relief:

A.    Declare that the Exclusion Rule is not in accordance with law;

B.    Declare that the Exclusion Rule is arbitrary and capricious;

C.    Hold unlawful and set aside the Exclusion Rule;

D.    Permanently enjoin the SBA from enforcing the Exclusion Rule, including against the Plaintiff, in determining forgiveness eligibility;

E.    Vacatur of the April 12, 2023 Affirmance;

F.    Award costs and reasonable attorney fees to the extent permitted by law; and

G.    Grant such other relief as this Court may deem just and proper.

DATED:  August 10, 2024

**BALLARD SPAHR LLP**

*/s/ Scott S. Humphreys*
Scott S. Humphreys
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
424-204-4373

Terence M. Grugan, Esq. (pro hac vice forthcoming)
Peter D. Hardy, Esq. (pro hac vice forthcoming)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8320

*Counsel for Appellant, National Funding, Inc.*

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400