1  ADAM GORDON
   United States Attorney
2  STEPHEN H. WONG
   Assistant U.S. Attorney
3  Cal. State Bar No. 212485
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 546-9464
   Facsimile: (619) 546-7751
6  Email: stephen.wong@usdoj.gov
   Attorneys for Defendants
7

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10  NATIONAL FUNDING, INC.,                | Case No.:  24-cv-1440-DMS-MMP

11             Plaintiff,                   | **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

12        v.

13  UNITED STATES SMALL BUSINESS           | Date:   January 23, 2026
14  ADMINISTRATION; KELLY                  | Time:   1:30 p.m.
    LOEFFLER, in her official capacity as  | Crtrm:  13A
15  Administrator of the Small Business    | Judge:  Hon. Dana M. Sabraw
    Administration; SCOTT BESSENT, in
16  his official capacity as United States
    Secretary of the Treasury; and THE
17  UNITED STATES OF AMERICA,
18
19             Defendants.
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

With the CARES Act, Congress amended the statute governing the SBA's 7(a) loan program and charged the SBA with disbursing billions of dollars to American businesses in crisis through the PPP. SBA reasonably construed the CARES Act to leave intact the longstanding policy favoring certain types of business and excluding others (referred to herein as the "Exclusion Rule"), except where Congress expressly directed otherwise. For example, for more than 60 years, SBA has excluded nude-dancing venues from the 7(a) loan program, and APA challenges to the SBA's exclusion of nude-dancing establishments from the PPP have consistently failed. *See, e.g., Pharaohs GC, Inc. v. United States Small Business Administration* (*Pharaohs*), 990 F.3d 217 (2d Cir. 2021). Similarly, for more than 60 years, SBA has excluded bankrupt companies from its 7(a) loan program, and APA challenges to the SBA's exclusion of bankrupt companies from the PPP have consistently failed. *See, e.g., USF Fed. Credit Union v. Gateway Radiology Consultants, P.A.* (*Gateway Radiology*)*,* 983 F.3d 1239, 1247 (11th Cir. 2020); *In re Vestavia Hills, Ltd.*, 630 B.R. 816, 851 (S.D. Cal. 2021) (Curiel, J.).

Here, Plaintiff National Funding, Inc. (National Funding) asserts yet another APA challenge to the SBA's Exclusion Rule—this time challenging whether the SBA's 60-year practice of excluding money lenders from its 7(a) loan program was properly carried over to the PPP. It was. As explained below, the SBA's application of the Exclusion Rule as a basis for denying National Funding's request for loan forgiveness is consistent with well-settled rules of statutory construction. The Court should reject National Funding's APA challenge, just as at least 15 prior courts have done.[1]

---

[1] *See DACO Invs., LLC v. SBA*, 2024 WL 750594 (W.D. La. Feb. 22, 2024); *Tidewater Finance Co. v. United States,* 2025 WL 763940 (N.D. VA, March 11, 2025); *U.S. Small Bus. Admin. V. Weather King Heating Air*, 646 B.R. 200 (Bankr. N.D. Oh. 2023); *Defy Ventures, Inc. v. SBA*, 469 F. Supp. 3d 459, 474, 476 (D. Md. 2020); *Diocese of Rochester v. U.S. SBA*, 466 F. Supp. 3d 363, 376-78 (W.D.N.Y. June 10, 2020); *Tradeways, Ltd. v. Dep't of the Treasury*, 2020 WL 3447767, at *13-15 (D. Md. June 24, 2020); *Brothers Petroleum, LLC v. United States*, 569 F. Supp. 3d 405 (E.D. La. 2021); *SBA v. Roman Catholic Church of Archdiocese of Santa Fe*, 632 B.R. 816 (Bankr. D.N.M. 2021); *In re*

1

## III.   ARGUMENT

**A. The CARES Act did not rescind longstanding SBA eligibility policies.**

### a.  National Funding's reading ignores the statutory context.

National Funding contends that with the phrase "any business concern," the CARES Act (15 U.S.C. § 636(a)(36)(D)(i)) (the Act) directed the SBA to provide loans to all businesses meeting statutory requirements, rescinding longstanding SBA eligibility regulations. Plaintiff's Motion for Summary Judgment Dk. No. 41-1 (NF MSJ) at 4. National Funding's reading is unsound. It views the PPP in isolation and ignores Congress's directive that the PPP be managed within the SBA's existing 7(a) loan program. National Funding displaces the PPP from its statutory home and urges the Court to find it was an entirely "new loan program" to which the Small Business Act (15 U.S.C. §§ 631 *et. seq*.), and its historic policies excluding certain types of businesses, did not "have any relation whatsoever." Dk. 47 at 5. Under National Funding's reading the Act, *sub silentio* reversed decades of SBA policy. Such profound change cannot be reconciled with the principle that "Congress is unlikely to intend any radical departures from past practice without making a point of saying so." *Jones v. United States*, 526 U.S. 227, 234 (1999).

The Court should reject National Funding's reading because it evicts the Act from its statutory home. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, 109 (1989). The Act states

---

*Vestavia Hills, Ltd.*, 630 B.R. 816 (Bankr. S.D. Cal. 2021); *In re Penobscot Valley Hospital*, 2020 WL 3032939 (Bankr. D. Me. June 3, 2020); *In re Archbishop of Agaña*, 2021 WL 1702311 (D. Guam Feb. 23, 2021); *Family Choice Financial, Inc. v. U.S. Small Business Admin*., (S.D. Miss Case No. 23-cv-38-DCB-LGI, Dk. No. 47); *Gordon College v. U.S. Small Business Admin*., 2024 WL 3471261 (D.DC Jul. 18, 2024); *Tradeways, Ltd. v. U.S. Dept. of the Treasury*, 2020 WL 3447767 at * 13 (D. Md. Jun. 24, 2020); Forest View Rehabilitation and Nursing Center, LLC v. U.S. Small Business Admin. 2024 WL 5247837, at *7 (N.D. Ill. Dec. 30, 2024); *35 State Street Hotel Partners, LLC v. Loeffler*, 2025 WL 870535 at *8  (D.D.C. March 20, 2025).

that "the Administrator may guarantee [PPP] loans under the same terms, conditions, and processes as a loan made under this subsection" — i.e., subsection (a) of 15 U.S.C. § 636, the SBA 7(a) loan program. 15 U.S.C. § 636(a)(36)(B). "[T]he PPP does not supplant or stand on footing apart from section 7(a), since the PPP represents amendments—new inclusions and new exclusions—to the existing mandates expressed in section 7(a)." *Weather King*, 648 B.R. at 205. Thus, the Small Business Act's 7(a) loan program is "foundation" for the PPP. *Pharaohs*, 990 F.3d at 227.

The Act provides that the SBA may guarantee PPP loans "under the same terms, conditions, and processes" as any other 7(a) loan. 15 U.S.C. § 636(a)(36)(B). National Funding's interpretation requires that "terms, conditions, and processes" have nothing to do with borrower eligibility. Under its reading, the phrase applies only to lenders issuing the loans, not borrowers. NF MSJ at 14; Plaintiff's Reply Brief, Dk. No. 47 (NF Reply) at 9-10. But when read in context and not isolation, see *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007), the "terms" and "conditions" to which § 636(a)(36)(B) refers plainly include terms of loan eligibility, which could only apply to borrowers. For example, Section 7(a) loan "terms and conditions" expressly altered by § 636(a)(36) include the "no-credit-elsewhere" requirement and certain SBA affiliation rules. See § 636(a)(36)(D)(iv), (I). These are conditions of 7(a) loan eligibility. *See* § 636(a)(1)(A); §§ 632(a)(1) (2) (definitions); 636(a)(1) (no credit elsewhere rule); 13 C.F.R. §§ 121.103(a)(6) (affiliation regulations). Similarly, § 636(a)(36)(D)(i) alters terms of eligibility by permitting size-compliant nonprofits (otherwise ineligible for § 7(a) loans by § 120.110(a)) to apply for PPP loans. In context, there is no ambiguity that § 636(a)(36)(B)'s reference to "terms [and] conditions" refers to terms and conditions of loan eligibility. *See Pharaohs*, 990 F.3d at 228.; *Gateway Radiology,* 983 F.3d at 1247.

National Funding's reading also ignores the principle that "Congress legislates against the backdrop of existing law." *Pharaohs*, 990 F.3d at 227. Under the prior-construction canon, "[C]ongress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute

without change." *Chugach Mgmt. Servs. v. Jetnil*, 863 F.3d 1168, 1174 (9th Cir. 2017) (citing *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)). Congress is presumed to have endorsed the Exclusion Rule when it reauthorized the PPP with the EAA in December 2020, and the ARPA in March 2021 (*see* SBA Cross Motion for Summary Judgment, Dk. No. 44 (SBA Mem.) at 6), leaving the rule intact. *See* SBA Mem. at 17-18.

SBA's interpretation does not render superfluous Congress's express incorporation of parts of the Exclusion Rule for second-draw loans. As National Funding acknowledges, when Congress reauthorized the PPP in December 2020, it explicitly adopted the Exclusion Rule. NF Reply at 11. National Funding claims that reading the CARES Act to allow enforcement of the Exclusion Rule for first-draw loans would render superfluous the explicit incorporation of the rule into second-draw loans. *Id*. But there is a difference between allowing an administrator the option to continue enforcing a policy and mandating such enforcement. Granting SBA *discretion* to apply the Exclusion Rule to first-draw loans does not make it redundant to *require* that SBA enforce the rule as to second-draw loans.

### b. The weight of authority favors SBA's interpretation

As noted, courts to have considered this issue are nearly unanimous in finding the Act did not preclude SBA from exercising discretion to apply the Exclusion Rule to the PPP. This includes both the Second and Eleventh Circuits (*Pharaohs* and *Gateway Radiology*), and at least 15 district courts – including in the Southern District of California, *see In re Vestavia Hills, Ltd*., 630 B.R. at 851.

National Funding does not address this authority and asks the Court to disregard it because it pre-dates *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 401 (2024); NF Reply at 31. National Funding is wrong for multiple reasons.

First, *Loper* is only relevant to the extent a court reached *Chevron* step 2, after finding the statute ambiguous. *Epic Sys. Corp. v. Lewis*, 484 U.S.497, 521 (2018) (deference under Chevron "is not due unless a 'court, employing traditional tools of statutory construction,' is left with an unresolved ambiguity."). The Second Circuit in

*Pharaohs*, and the Eastern District of Virginia in *Tidewater Finance Co. v. United States Small Business Administration*, 2024 WL 4329140 at *6, expressly adopted the SBA's reading without relying on *Chevron* deference, finding the CARES Act unambiguously authorized SBA to apply the Exclusion Rule to the PPP. *See Pharaohs*, 990 F.3d at 226 ("the CARES Act unambiguously gives the Administrator discretion to adopt the longstanding "terms, conditions, and processes" of the 7(a) program."); *Tidewater Finance Co.*, 2024 WL 4329140 at *6 (*Loper* not relevant because Act is not ambiguous in allowing the SBA to impose eligibility restrictions on the PPP).

Second, as set forth in the SBA Mem. at 11-12, and reaffirmed in recent Ninth Circuit decisions, "[a]fter *Loper Bright*, those 'prior cases that relied on the *Chevron* framework ... are still subject to statutory *stare decisis* despite our change in interpretive methodology . . . our holdings 'that specific agency actions are lawful' were not overruled by *Loper Bright* simply because they relied on *Chevron*." *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1087 (9th Cir. 2025) (quoting *Loper Brigh*, 603 U.S. at 412-13. *Gateway Radiology* found SBA's interpretation was reasonable and applied *Chevron* deference, but it did not hold that in the absence of *Chevron* deference it would have reached a different result. *Id.* at 1262 (finding that even before applying *Chevron* deference "Congress did delegate to the SBA the question of [PPP loan eligibility].")

Finally, even while asserting that the Court should disregard the cases supporting SBA's interpretation, National Funding does not cite a single case where a court indicated it would have reached a different result in the absence of *Chevron* deference. NF Reply at 24. Instead, National Funding repeatedly relies on invalid caselaw, citing *Nat'l Ass'n of Home Builders v. SBA*, No. 20-1178, 2021 WL 4458660 (E.D. Mich. Sept. 28, 2021) multiple times without mentioning that the district court's decision was vacated by the Sixth Circuit. *Nat'l Ass'n of Home Builders v. SBA,* 2023 WL 192239 (6th Cir. Jan. 13, 2023) ("the district court's judgment is **VACATED**.") (emphasis in original). The only other authority National Funding cites in support of its position is *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 746 (6th Cir. 2020), a motions panel

decision with limited authority because such decisions are tentative, made on shortened timelines, and without full briefing. SBA Mem. at 19.

### c. The circumstances prompting the CARES Act do not entail that Congress abandoned established safeguards for public funds.

National Funding reminds the Court in its Reply that the pandemic was a true calamity for American workers and businesses. NF. Reply at 6-7. From such pain, National Funding urges the inference that Congress abandoned longstanding policies safeguarding scarce public funds. SBA drew the opposite conclusion. Instead of scraping decades-long policies protecting public funds, SBA construed the economic crisis to call for reinforcement of such policies by directing resources to the types of businesses that, in SBA's view, could make best use of such assistance. To be sure, the CARES Act did expand the universe of traditional 7(a) loan recipients, expanding the program to veterans' organizations, non-profit organizations,[2] and tribal business concerns (§ 636(a)(36)(D)(i)). SBA modified the PPP to accommodate such concerns. But SBA construed the act to leave other exclusions intact, consistent with longstanding policy.

### d. National Funding's reading results in unusual policy departures.

If National Funding's interpretation of the CARES Act is correct, several traditionally ineligible businesses would be made eligible with no express word from Congress. In addition to financial businesses, the Exclusion Rule covers 16 other business categories, such as: (i) businesses which "present live performances of a prurient sexual nature" or sell products "of a prurient sexual nature;" (ii) businesses primarily engaged

---

[2] Contrary to National Funding's contention at NF Reply pages 11-12, non-profits are ineligible for Section 7(a) loans not because they are not "small business concerns" but because being organized "for profit" is an eligibility criterion, 13 C.F.R. § 120.100(b), and a reason for ineligibility, 13 C.F.R. § 120.110(a). There would not have been a need to exclude "non-profit businesses" from eligibility for Section 7(a) loans, as set forth in 13 C.F.R. § 120.110(a), if they were already excluded because they were not a "business concern." In the end, the point is not *why* Congress extended eligibility to non-profits; the point is that Congress chose to extend eligibility *only* to nonprofits, and no other § 120.110 businesses. The proper legal inference to be drawn is that Congress' decision to not exempt other § 120.110 businesses was deliberate. *See* SBA Mem. at 16-17.

in political or lobbying activities; (iii) businesses which limit memberships for reasons other than capacity; (iv) and life insurance companies. 13 C.F.R. § 120.110 (b), (d), (p), & (r). National Funding attempts to avoid this result by asserting that the CARES Act's use of the phrase "any business concern" incorporates the statutory definition of a "business concern" in 15 U.S.C. § 636(a)(36)(D) to eliminate absurdities. NF Reply at 8. But National Funding cannot deny that each of the examples listed above fit the statutory definition of a "business concern," and if National Funding were correct, the CARES Act would expand 7(a) loan eligibility to all of them. "Absurd" is in the eye of the beholder. Congress could have directed public funds to strip clubs, pornographers, lobbyists and special interest groups, cannabis companies, insurance companies, and money lenders. But it would be an unusual and radical departure from the usual types of businesses receiving federal funds. SBA construed the CARES act to leave such customs in place, except where Congress expressly directed it to depart. The Court should affirm that reading. *See Whitman v. Am. Trucking Ass'n.*, 531 U.S. 457, 468 (2001) (Congress "does not . . . hide elephants in mouseholes."); *Jones v. United States*, 526 U.S. 227, 234 (1999) ("Congress is unlikely to intend any radical departures from past practice without making a point of saying so."); *Diocese of Rochester*, 466 F. Supp. 3d at 376 (same).

### B. National Funding has not shown the Exclusion Rule to the PPP is arbitrary and capricious on its face.

#### a. National Funding's failure to petition the SBA to amend the Exclusion Rule precludes it from raising the issue here.

National Funding asserts that the SBA acted arbitrarily and capriciously by implementing the Exclusion Rule without a contemporaneous explanation. NF Mem. at 20. If National Funding was aggrieved by SBA's administration of the Exclusion Rule, the remedy under the APA is not to remain silent at the agency level and raise the issue for the first time in federal court. Rather, "[t]he proper procedure for pursuit of [their] grievance is [first] . . . a petition to [SBA] for rulemaking," as provided for by 5 U.S.C. § 553(e) ("each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule"), "denial of which . . . can [then] be appealed

to the courts[.]" *Auer v. Robbins*, 519 U.S. 452, 459 (1997) ("there is no basis for the court to set aside the agency's action prior to any application for relief addressed to the agency itself"); *see also* Exxon Mobil Corp. v. EPA, 217 F.3d 1246 (9th Cir.2000) (party's failure to raise an argument before an administrative agency waives right to judicial review); *see also DACO Invs.,* 2024 WL 750594, at *14 (If they believed they were entitled to an exception, "[t]he proper course was for Plaintiffs to request a rulemaking"); *Tidewater Finance Co.* 2024 WL 4329140 at 12 (rejecting challenge to SBA's implementation of the Exclusion Rule to financial businesses as arbitrary and capricious because plaintiff failed to request rulemaking before the agency).

National Funding did not raise this argument before the SBA and is thus precluded from raising the issue in this action. *See* SBA Mem. at 20-21 (arguing issue preclusion). Absent a specific request for rulemaking, the SBA had no obligation to explain why it did not also exempt money lenders from the Exclusion Rule.

### b. The Seaborn Declaration explains the Exclusion Rule

If the Court reaches the merits, it should find that the Seaborn Declaration provides a reasonable explanation for the Exclusion Rule. National Funding brands the Seaborn Declaration as an impermissible "post-hoc rationale." NF Reply at 16. It fails to reconcile its conclusory statement with pertinent authority permitting supplemental declarations to explain an agency's decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.,* 602 F.3d 1125, 1131 (9th Cir.2010) (court may allow supplementation of the administrative record where necessary to determine if the agency has considered all factors and explained its decision.)

National Funding's dismissive consideration of the Seaborn Declaration ignores that the text, structure and context of the CARES Act makes clear that § 112.110(b)'s ineligibility rule for financial businesses was not disturbed by the CARES Act. Because there was no change of policy to explain, Director Seaborn described how the imperative to make billions of dollars of PPP loans available as soon as possible required the agency to act quickly and focus on the specific programmatic changes and modifications Congress mandated, and let borrowers and lenders know what they "need[ed] to know

and do" to participate. SBA Mem. at 21-23 (citing Seaborn Decl.) There was no time to consider whether to change existing policies. *Id*. Whether National Funding likes the explanation or not, it cannot refute that SBA considered the "relevant factors" and came to this rational and reasonable conclusion. *DACO Invs*, 2024 WL 750794 at *12-13 (finding Seaborn Decl. reasonable); *Tidewater Finance Co*. 2024 WL 4329140 at 12.

## C. SBA's application of the Exclusion Rule to National Funding was not arbitrary and capricious.

National Funding contends that SBA does "not contest" that it has forgiven the "vast majority of PPP loans issued to businesses primarily engaged in lending." NF Reply at 19. This is misleading because National Funding never raised this issue with the SBA at the time of SBA's initial decision, much less decided or conceded. USA-AR000143-48. There is no evidence in the record at any level of administrative review that SBA conceded or determined that all businesses with the same NAICS code are similarly situated. See USA-AR000065-83, 000092-114. National Funding did not argue that it was similarly situated to all businesses using a NAICS code beginning with "52" or "522" until it brought the instant lawsuit before this Court. The problem with that is, as discussed at SBA Mem. at 23, that in an APA action, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir.1985). "[T]he district court is to determine whether . . . as a matter of law the evidence in the administrative record permitted the agency to make the decision." *Id*. Had it raised these facts with the agency it would be fair to charge the agency with a response. But National Funding should not be permitted to bypass the agency and raise the issue for the first time in an APA action. *See Fence Creek Cattle Co. v. U.S. Forest Serv.,* 602 F.3d 1125, 1131 (9th Cir.2010) (describing the "strictly construed" exceptions for expanding the administrative record in an APA case).[3]

---

[3] National Funding cites *Crouse Health Hosp. v. United States Small Bus. Admin.,* 2025 WL 2161260 (N.D. NY, July 30, 2025) but fails to mention that *Crouse* allowed plaintiff to supplement the record only after the court found the agency acted in bad faith at the administrative level: "I find that the SBA's efforts to essentially hide the ball at the

Moreover, National Funding is wrong to rely on NAICS codes as the sole criteria for eligibility, NF Reply at 19-20. NAICS is not an SBA-created system designed to categorize and delineate entities for purposes of SBA loan or forgiveness decisions. The NAICS code is just one among several factors SBA used to decide forgiveness. For example, in National Funding's case SBA gathered substantial business documents, including income statements and balance sheets. See Andrews Dec. at ¶ 18, USA-AR-00126, and even reviewed National Funding's website USA-AR000139, 183. Simply pointing to a business classification code that SBA did not create, which serves other purposes, and which is only one factor in the decision process, does not demonstrate that all businesses with that same NAICS code are similarly situated.

It does not help National Funding to say that "thousands of businesses primarily engaged in lending and financing received loan forgiveness." NF Reply at 21. Many thousands did receive loan forgiveness but even more did not. SBA Mem. at 24 (citing Andrews Declaration ¶20 (explaining that slightly less than 50% of businesses using National Funding's NAICS code as of July 3, 2022, had received loan forgiveness). Having the same NAICS code, then, is agnostic to show that National Funding was similarly situated to those whose loans were forgiven. It is just as likely, indeed, more likely, that National Funding is similarly situated to those with the same NAICS code who did not receive loan forgiveness.

## IV.   CONCLUSION

Defendants respectfully requests that the court enter judgment for Defendants.

DATED: January 16, 2026                 Respectfully submitted,

ADAM GORDON
United States Attorney
*s/ Stephen H. Wong*
STEPHEN H. WONG, AUSA
Attorneys for Defendant

---

administrative appellate stage when Crouse proffered substantial evidence of SBA's inconsistent application of the alternative size standards reflects bad faith." *Id*. at *8. There is no evidence of bad faith here, nor does National Funding argue bad faith.