UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FUNDING, INC.,<br><br>                               Plaintiff,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION; et al.,<br><br>                               Defendants. | Case No.: 24-cv-01440-DMS-MMP<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 41, 44]** |

In response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief and Economic Security ("CARES") Act. The CARES Act, in relevant part, created the Paycheck Protection Program ("PPP"), which allowed the Small Business Administration ("SBA" or "Administrator") to administer and forgive loans to select businesses impacted by the pandemic. Coronavirus Aid, Relief and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281, 286 (2020). Plaintiff National Funding, Inc. applied for and received a PPP loan in April 2020. The SBA later refused to forgive Plaintiff's PPP loan, determining that Plaintiff was ineligible to receive the loan in the first place. Plaintiff appealed to the agency's Office of Hearing and Appeals ("OHA"). After OHA affirmed SBA's decision, Plaintiff sought relief before this Court. Plaintiff

1

contends that the SBA violated the Administrative Procedure Act ("APA") by refusing to forgive the loan. Pending now is Plaintiff's motion for summary judgment ("Plaintiff's MSJ"). (Pl.'s MSJ, ECF No. 41-1.) Defendants[1] filed a joint response in opposition to Plaintiff's MSJ and cross-motion for summary judgment ("Defendants' MSJ"). (Defs.' MSJ, ECF No. 44-1.) Plaintiff filed a combined reply in support of its MSJ and response in opposition to Defendants' MSJ. (Pl.'s Resp., ECF No. 47.) Defendants filed a reply in support of their MSJ. (Defs.' Reply, ECF No. 48.) The matter is suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 49.) For the following reasons, the Court denies Plaintiff's MSJ and grants Defendants' MSJ.

## I.     BACKGROUND

### A. Legal Background

In 1953, the Small Business Act created and conferred on the SBA the power to provide financial assistance to small businesses. H.R. 5141, 83d Cong. (1953); *Tidewater Fin. Co. v. U.S. Small Bus. Admin.*, No. 23-CV-609, 2024 WL 4329140, at *2 (E.D. Va. Aug. 9, 2024), *report and recommendation adopted,* No. 23-CV-609, 2025 WL 763940 (E.D. Va. Mar. 11, 2025); 15 U.S.C. § 636(a). "The SBA's primary mechanism for aiding small businesses is by financing private 'Section 7(a) loans.'" *Salutoceuticals, LLC v. U.S. Small Bus. Admin.*, 750 F. Supp. 3d 764, 766 (W.D. Tex. 2024). "The Act also provides the SBA with the authority to make rules and regulations it deems necessary to carry out its statutory authority." *Tidewater Fin. Co.*, 2024 WL 4329140, at *2; 15 U.S.C. §§ 633(d), 634(b)(6)–(7). Accordingly, the SBA enacted 13 C.F.R. § 120.110 in 1996, which outlined several categories of businesses ineligible for Section 7(a) loans ("Section 120.110" or "Exclusion Rule"). 13 C.F.R. § 120.110. Most relevant here, the SBA excluded "[f]inancial businesses primarily engaged in the business of lending, such as banks, finance

---

[1] "Defendants" are the SBA; Kelly Loeffler, in her official capacity as Administrator of the SBA; Scott Bessent, in his official capacity as United States Secretary of the Treasury; and the United States of America.

companies, and factors" from obtaining Section 7(a) loans. *Id.* § 120.110(b); (Pl.'s MSJ 3–4.) The SBA later promulgated a Standard Operating Procedure for Lender and Development Company Loan Programs ("2019 SOP"), which also excludes "businesses primarily engaged in lending, investment, or . . . an otherwise eligible business engaged in financing, factoring, or investment not related or essential to the business." Small Bus. Admin., SOP 50 10 5(K) (2019); (Pl.'s MSJ 4.)

In March 2020, the CARES Act amended Section 7(a) to create the PPP. CARES Act, Pub. L. No. 116-136, 134 Stat. 281, 286 (2020). "[T]he CARES Act established the PPP as a temporary expansion of SBA's pre-existing business-loan authority under Section 7(a) by adding a new paragraph—Paragraph 36—to Section 7(a)." *Salutoceuticals, LLC*, 750 F. Supp. 3d at 767 (citing 15 U.S.C. § 636(a)(36)). "The PPP was not created as a standalone program; instead, it was added into Section 7(a), albeit with several of that subsection's general eligibility requirements relaxed." *Id.* The CARES Act provides that "[e]xcept as otherwise provided in this paragraph, the [SBA] may guarantee [PPP] loans under the same terms, conditions, and processes as a loan made under" Section 7(a). 15 U.S.C. § 636(a)(36)(D)(i). "The statute then set forth in detail the precise ways in which PPP loans would differ from other Section 7(a) loans." *Salutoceuticals, LLC*, 750 F. Supp. 3d at 767 (citing 15 U.S.C. § 636(a)(36)(D)–(W)).

On April 2, 2020, the SBA posted an interim final rule, to be effective April 15, 2020, stating that "[b]usinesses that are not eligible for PPP loans are identified in [the Exclusion Rule] and described further in SBA's [2019 SOP], except that nonprofit organizations authorized under the Act are eligible" ("First IFR"). Business Loan Program Temporary Changes; Paycheck Protection Program ("First IFR"), 85 Fed. Reg. 20,811, 20,812 (April 15, 2020); (Administrative R. ("AR"), ECF No. 37, at 144.) On April 28, 2020, the SBA issued a second interim final rule, allowing certain businesses—namely, hospitals owned by governmental entities and businesses that receive legal gaming revenue—to be eligible for a PPP loan, despite falling under the Exclusion Rule. *See* Business Loan Program Temporary Changes; Paycheck Protection Program—

Requirements—Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. 23,450, 23,451 (Apr. 28, 2020). The SBA "believes this approach is more consistent with the policy aim of making PPP loans available to a broad segment of U.S. businesses." *Id.*

Congress then enacted the Consolidated Appropriations Act ("CAA") later that year—also under Section 7(a)—which "authorized the SBA to guarantee so-called 'second draw' PPP loans to certain businesses that obtained PPP loans under the CARES Act ('first-draw' PPP loans)." *Salutoceuticals, LLC*, 750 F. Supp. 3d at 776; 15 U.S.C. § 636(a)(37). The CAA explicitly states that eligible entities do not include those described in the Exclusion Rule or "any successor regulation or other related guidance or rule that may be issued by the Administrator." 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa).

**B. Factual Background**

Plaintiff, which assists small and medium-sized businesses to acquire working capital loans, was "detrimentally impacted" by the COVID-19 pandemic. (AR 144.) Accordingly, Plaintiff applied for a PPP loan on April 8, 2020. (*Id.* at 145.) Plaintiff's application was approved on April 14, 2020, and Plaintiff received $6,088,165.00. (*Id.* at 141.) The loan was funded on April 21, 2020. (*Id.* at 145.) Plaintiff applied for loan forgiveness on December 7, 2020. (*Id.*) But, on November 30, 2021, the SBA determined Plaintiff was ineligible for loan forgiveness because it is a "financial business primarily engaged in lending, investments or an ineligible business engaged in financing or factoring."[2] (*Id.* at 141.) Plaintiff appealed to the OHA, and thereafter the OHA affirmed SBA's decision on April 12, 2023.[3] (*Id.* at 170–85.)

---

[2] While Plaintiff contends that it is "not primarily in the business of lending," and therefore not a financial business typically ineligible for loans under Section 7(a), (Pl.'s MSJ 2 n.1), Plaintiff raises only legal challenges to SBA's decision, which, Plaintiff argues, "would have been improper even if [Plaintiff was] in the excluded category of businesses." (*Id.*)

[3] Because the Court does not reach the merits of Count 4, *see infra* III.C, the Court finds it unnecessary to include in this Order Plaintiff's allegations that "the SBA has forgiven numerous loans to what the SBA perceives as entities engaged in the same type of business as National Funding." (*See* Pl.'s MSJ 8.)

**C. Procedural History**

Plaintiff initiated this action on August 13, 2024, arguing that the SBA's Exclusion Rule is being retroactively enforced against Plaintiff ("Count 1"); violates the CARES Act ("Count 2"); and is arbitrary and capricious on its face ("Count 3") and as applied to Plaintiff ("Count 4"). (Compl., ECF No. 1.) Plaintiff moves for summary judgment on the second through fourth counts. (Pl.'s Resp. 2 n.1.) Defendants move for summary judgment on all counts.

## II.     LEGAL STANDARD

"A motion for summary judgment is an appropriate vehicle to review an administrative action even though the court does not use the standard of review in Federal Rule of Civil Procedure 56." *SLPR, LLC v. San Diego Unified Port Dist.*, No. 06 CV 1327, 2009 WL 10672895, at *2 (S.D. Cal. Aug. 4, 2009) (citations omitted). When reviewing an agency decision, a court must set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[C]ourts review agency interpretations of statutes de novo, exercising their own 'independent judgment in deciding whether [the] agency has acted within its statutory authority.'" *Novedades y Servicios, Inc. v. Fin. Crimes Enf't Network*, 785 F. Supp. 3d 785, 802 (S.D. Cal. 2025) (citation omitted). "Doing so requires using 'all relevant interpretive tools' to determine the 'best' reading of a statute; a merely 'permissible' reading is not enough." *Id.* An agency's "legal error requires that its decisions be set aside." *Meduri Farms, Inc. v. U.S. Small Bus. Admin.*, 799 F. Supp. 3d 1144, 1146 (D. Or. 2025) (citing *Grand Canyon Univ. v. Cardona*, 121 F.4th 717, 726 (9th Cir 2024)). "But if an agency 'construed the law correctly,' then a court reviews the agency's 'application of the law to the facts of the case under the APA's deferential standards.'" *Id.* (citing *Cardona*, 121 F.4th at 723). "Under this deferential arbitrary-and-capricious standard, the agency action need only be 'reasonable and reasonably explained.'" *Id.* (citing *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)).

"Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court." *SLPR, LLC*, 2009 WL 10672895, at *2 (citation omitted). "The Ninth Circuit allows extra-record material 'if necessary to determine whether the agency has considered all relevant factors and has explained its decision' or 'when supplementing the record is necessary to explain technical terms or complex subject matter.'" *Id.*

## III.  DISCUSSION

### A. Whether the Exclusion Rule Violates the CARES Act (Count 2)

The CARES Act provides, in part, that "in addition to small business concerns, any business concern . . . shall be eligible to receive a covered loan." (Pl.'s MSJ 11 (emphasis omitted) (citing 15 U.S.C. § 636(a)(36)(D)(i)).) Plaintiff argues the CARES Act "defined within the Act what it intended to be the entire universe of businesses that would be eligible for PPP loans," and thus "all businesses" meeting those such enumerated specifications are entitled to PPP loans (and forgiveness). (*Id.* at 11–12 (emphases omitted).) Plaintiff contends that the CARES Act left "no room for the SBA to put a chokehold on those requirements by applying further limitations like the Exclusion Rule." (*Id.* at 11.) Defendants argue Plaintiff's interpretation fails because it construes the provision in "isolation, treats the PPP as a standalone program, and fails to consider the statutory scheme as a whole." (Defs.' MSJ 14.) Defendants contend that because the PPP "was added into the existing § 7(a) program," the PPP is subject to "existing conditions and regulations, as well as existing SBA authority," including the Exclusion Rule. (*Id.* at 5 (citations omitted).) The Court agrees with Defendants.

"[W]hile the word 'any' generally carries an expansive meaning, 'any' can and does mean different things depending upon the setting, and it is an error to place dispositive weight on 'any' without considering the rest of the statute." *Defy Ventures, Inc. v. U.S. Small. Bus. Admin.*, 469 F. Supp. 3d 459, 472–73 (D. Md. 2020) (citation modified). "It is a fundamental canon of statutory construction that the words of a statute must be read in

their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (citations omitted).

Here, the CARES Act "authorize[s] the SBA to guarantee PPP loans 'under the same terms, conditions, and processes' as Section 7(a) loans.'" *Meduri Farms, Inc.*, 799 F. Supp. 3d at 1148; 15 U.S.C. § 636(a)(36)(B). "Because Congress expressly legislated against the backdrop of an existing statutory and regulatory scheme, it may be presumed that Congress was aware of the pre-existing rules and regulations of the Section 7(a) program— including Section 120.110—when it placed the PPP under Section 7(a)." *DACO Invs., LLC v. U.S. Small Bus. Admin.*, No. 6:22-CV-01444, 2024 WL 750594, at *9 (W.D. La. Feb. 22, 2024). "[Y]et, Congress did not express its intent in the CARES Act to include borrowers typically excluded by Section 120.110, except for non-profit businesses." *Id.* This "strongly suggests that Congress deliberately chose not to change the Administrator's statutory discretion to exclude businesses, other than those it expressly identified in the CARES Act." *Id.*

Plaintiff argues that "[i]f merely placing PPP loans in Section 7(a) subjected the program to all Section 7(a) regulations, including the Exclusion Rule, then the provision permitting SBA to guarantee loans under the same 'terms, conditions, and processes' as other Section 7(a) loans would have no effect." (Pl.'s Resp. 10–11.) However, because the CARES Act provides that the SBA "*may* guarantee loans under the same terms, conditions, and processes as a loan made under [Section 7(a)]," 15 U.S.C. § 636(a)(36)(B) (emphasis added), the SBA has the discretion—not the requirement—to "implement the PPP under the pre-existing Section 7(a) program.'" *DACO Invs., LLC*, 2024 WL 750594, at *9 n.96 (emphasis added); *see also In re Gateway Radiology Consultants, P.A.*, 983 F.3d

1239, 1257 (11th Cir. 2020) (finding the use "of the permissive word 'may' vests the SBA with discretionary authority"). Therefore, it is not redundant to include such a provision within the CARES Act.

Plaintiff argues that the words "terms," "conditions," and "processes" do not incorporate the Exclusion Rule into the CARES Act for various reasons, none of which are convincing. First, Plaintiff contends that "the statutory text plainly means that SBA will guarantee to lenders loans already extended – and, therefore, for which eligibility had already been established – under the same standard [Section] 7(a) loan guarantee 'terms, conditions, and processes.'" (Pl.'s MSJ 14.) However, this interpretation cannot be correct because the CARES Act "was passed at the outset of the Pandemic to solve a future problem, not to govern loans already issued." (Defs.' MSJ 19 n.16.)

Next, Plaintiff argues that "terms" and "conditions" refer to parameters of the loans, such as "loan amounts, maturity terms, interest rates, and fees"—not eligibility requirements. (Pl.'s MSJ 14.) The Court disagrees. The plain meaning of "condition" includes "a restricting or modifying factor" (i.e., a "qualification") or "something essential to the appearance or occurrence of something else" (i.e., a "prerequisite"). *Condition*, Merriam-Webster, https://www.merriam-webster.com/dictionary/condition. And to be "eligible" means to be "*qualified* to participate or be chosen." *Eligible*, Merriam-Webster, https://www.merriam-webster.com/dictionary/eligible. Thus, the plain meaning of "condition" can mean or include "eligibility." Other parts of the statutory scheme make clear that Congress understood "conditions" to include "eligibility." Specifically, 15 U.S.C. § 636(m)(4)(F)(iii)(I) provides that "[g]rants under this subparagraph . . . shall not require the contribution of matching amounts as a *condition of eligibility*." 15 U.S.C. § 636(m)(4)(F)(iii)(I) (emphasis added). The SBA's website, titled "Terms, conditions, and eligibility," also states that "[a]s a lender, these *conditions* determine which businesses you can lend to and the types of loans you can give." *Terms, conditions, and eligibility*, U.S.

Small Bus. Admin., https://www.sba.gov/partners/lenders/7a-loan-program/terms-conditions-eligibility (emphasis added).

Plaintiff then argues that "[e]ven if SBA's traditional exclusions under Section 7(a) were a 'term[], condition[], or process[]' of a loan guarantee, these exclusions would still run contrary to the CARES Act because this paragraph is explicitly made subject to other provisions . . . which includes the Act's expansive, detailed, and unambiguous definition of PPP eligibility." (Pl.'s MSJ 13.) However, the language "any business concern . . . shall be eligible" is "not to the contrary when read in its statutory context—specifically, its foundation in the Small Business Act's 7(a) loan program." *Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 226 (2d Cir. 2021). Thus, the Court finds "the CARES Act expressly gives the Administrator the general authority to adopt the 'same terms, conditions, and processes' for PPP loans as for 7(a) loans," including the Exclusion Rule. *Id.* at 228.

Further, the CARES Act "sets forth precise ways . . . in which Congress intended PPP loans to differ from other Section 7(a) loans." (Defs.' MSJ 5 (citing 15 U.S.C. § 636(a)(36)(D)–(W)).) For example, "the PPP authorized SBA to guarantee loans to nonprofit organizations, veteran organizations, Tribal concerns, independent contractors, and self-employed persons, in addition to small-business concerns; it relaxed size limitations; and it selectively waived certain SBA affiliation rules." *Id.* (citations omitted). Additionally, 15 U.S.C. § 636(a)(36)(I) waives the requirement that an applicant be unable to obtain credit elsewhere. *In re Gateway Radiology Consultants, P.A.*, 983 F.3d at 1258. Thus, Defendants' interpretation of the CARES Act is not contrary to Congress's overall intention "to expand that eligibility beyond the types of entities usually eligible for Section 7(a) loans." (*See* Pl.'s MSJ 11.) Indeed, the CARES Act relaxed many of the general eligibility requirements. Further, Congress was clear and explicit when it intended for the PPP to differ from traditional Section 7(a) loans.

Lastly, Plaintiff argues that because Congress explicitly adopted the Exclusion Rule when enacting the CAA, Defendants' interpretation of the CARES Act would render this

explicit reference "superfluous." (Pl.'s Resp. 11.) The Court disagrees for several reasons. First, the CAA provides that the First IFR "properly clarified the eligibility of churches and religious organizations for loans made" under the CARES Act. *See* Consolidated Appropriates Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, 2007 (2020). The CAA also provides that "[t]he prohibition on eligibility established by [Section 120.110(k)] shall not apply to a loan" under the CARES Act (i.e., the first-drawn loans). *Id.* "[A]n agency's interpretation of a statute may be confirmed or ratified by subsequent congressional failure to change that interpretation." *DACO Invs., LLC*, 2024 WL 750594, at *10 (citation omitted). If Congress disapproved of the First IFR, it should and would have said as much in the CAA. Yet, Congress explicitly approved at least one aspect of the First IFR. Further, it would be unreasonable for Congress to clarify that only one subpart of the Exclusion Rule—Section 120.110(k)—does not apply to loans under the CARES Act if it did not want the entirety of the regulation to be applied to the CARES Act. Finally, "[t]he terms of § 636(a)(36)(B) are permissive," while the CAA "§ 311(a) is prohibitory." (Defs.' MSJ 18 n.18.) "Interpreting § 636(a)(36)(B) to grant SBA discretion to exclude Section 120.110 businesses from first-draw eligibility does not make it redundant to require that the SBA exclude them from second-draw eligibility." (*Id.*)

Considering the above, the Court finds that the Exclusion Rule is not violative of the CARES Act. Accordingly, the Court **DENIES** Plaintiff's MSJ and **GRANTS** Defendants' MSJ as to Count 2.

### B. Whether the Exclusion Rule was Retroactively Applied (Count 1)

Plaintiff applied for a PPP loan on April 8, 2020, and the loan was approved on April 14, 2020. (Pl.'s MSJ 7; *id.*, Ex. A, ¶ 10.) The First IFR became effective April 15, 2020. (*Id.* at 5 (citing First IFR, 85 Fed. Reg. 20,811, 20,812 (April 15, 2020)).) Thus, Plaintiff alleges that the Exclusion Rule, through the First IFR, is being unlawfully retroactively applied to Plaintiff. (Compl. ¶ 76.) Plaintiff does not move for summary judgment of Count 1, (Pl.'s Resp. 2 n.1), but Defendants do. (Defs.' MSJ 2, 12.) Defendants contend that Count 1 fails because the First IFR "stated only what preexisting law required and had

no retroactive effect when applied to Plaintiff's PPP loan."[4] (*Id.* at 12.) Plaintiff does not oppose Defendants' motion for summary judgment as to Count 1.[5]

"Regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations requires this result." *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1083 (9th Cir. 2002) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). A regulation operates retroactively when it would "impair rights a party possessed when [it] acted, increase [its] liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *Bahr v. Regan*, 6 F.4th 1059, 1072 (9th Cir. 2021). "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf*, 511 U.S. at 269. Instead, the key is "whether the new provision attached new legal consequences to events completed before its enactment." *Id.* at 270. The Court finds that the First IFR is not retroactive.

The First IFR's "applicability date makes clear it applies to all PPP loan applications received through June 30, 2020." (AR 184 (citing First IFR, 85 Fed. Reg. 20,811, 20,812 (April 15, 2020)).) Further, while the First IFR was effective on August 15, 2020, (*id.*), it was released to the public on April 2, 2020. (*Id.*) SBA guidance was also available to Plaintiff when it submitted its PPP loan application on April 8, 2020. (*Id.*) And, the First IFR was in effect when Plaintiff accepted PPP loan funds on April 21, 2020. (*Id.*) Thus, Plaintiff had notice that the First IFR "would apply to its PPP loan application and there is no retroactive harm to lenders or finance companies under" the First IFR. (*Id.*)

---

[4] Defendants also argue that "Plaintiff does not address Count 1 at all in its MSJ and has therefore abandoned that claim." (Defs.' MSJ 12 (citations omitted).) However, "there is no requirement that a moving party seek summary judgment on all claims or lose the right to pursue outstanding claims." *United States v. Rhody Dairy, L.L.C.*, 812 F. Supp. 2d 1239, 1245 (W.D. Wash. 2011). Accordingly, the Court does not find that Plaintiff abandoned Count 1.

[5] "[A] motion for summary judgment may not be granted based on a failure to file an opposition to the motion, regardless of any local rule that suggests the contrary." *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013). Thus, the Court considers the merits of Defendants' arguments.

Accordingly, the Court **GRANTS** Defendants' MSJ as to Count 2.[6] *See Salutoceuticals, LLC*, 750 F. Supp. 3d at 777 (holding First IFR is not retroactive); *Bruckner Truck Sales, Inc. v. Guzman*, No. 23-CV-097-Z, 2023 WL 8606761, at *7 (N.D. TX, Dec. 12, 2023) (same).

### C. Whether the Exclusion Rule is Arbitrary and Capricious (Counts 3 and 4)

Defendants argue "the Court should reject Plaintiff's claims that the SBA acted arbitrarily and capriciously – both facially and as applied – because Plaintiff did not exhaust those claims before the agency." (Defs.' MSJ 20.) Plaintiff appears to concede that it did not raise its arbitrary and capricious arguments before the OHA. Plaintiff argues, rather, that issue exhaustion was not required. (Pl.'s Resp. 13–15.) The Court finds that the SBA regulations require issue exhaustion, and therefore, Plaintiff waived its arbitrary and capricious arguments by failing to present them to the OHA.

"[R]equirements of administrative issue exhaustion are largely creatures of statute." *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37 (1952) (collecting statutes). It is also "common for an agency's regulations to require issue exhaustion in administrative appeals." *Sims*, 530 U.S. at 108. "And when regulations do so, courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." *Id.*; *see also Fam. Choice Fin.*, OHA Docket No. PPP-8323747201, at 8 ("When an agency's regulations contain an issue-exhaustion requirement for internal agency review, 'courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues.'").

First, Defendants argue the APA requires issue exhaustion. (Defs.' MSJ 21.) However, if such an interpretation were correct, the APA would require issue exhaustion

---

[6] In light of this determination, the Court does not consider the Defendants' argument that "whether SBA applied the Loan Review IFR retroactively is not of consequence to Plaintiff's claims," because "the SBA had relied directly on paragraph 636m(a)(10)'s definition of 'eligible recipient,' and its authority under the Small Business Act, to investigate Plaintiff's loan-forgiveness eligibility," instead of the First IFR and Exclusion Rule. (Defs.' MSJ 13.)

in every agency action case—a rule the Supreme Court has rejected. (Pl.'s Resp. 13.) Defendants do not point to another statute, including within the CARES Act, the CAA, or the Small Business Act, that requires issue exhaustion before the SBA or OHA. (*Id.*)

Next, Defendants argue that the SBA regulations require issue exhaustion. (Defs.' MSJ 21.) Defendants point to 13 C.F.R. § 134.1201(d), which provides that "[a]n appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a Federal district court." (*Id.*) This particular regulation "only requires that an appeal be taken to OHA"—it does not create an issue exhaustion requirement. (Pl.'s Resp. 14); *see also Sims*, 530 U.S. at 107 (determining whether the plaintiff needed to show issue exhaustion "in addition to exhaustion of remedies"). Several other SBA regulations, however, require an appeal petition to the OHA to include "[a] full and specific statement as to why the final SBA loan review decision is alleged to be erroneous, together with *all factual information and legal arguments* supporting the allegations." 13 C.F.R. § 134.1204 (emphasis added); *see also id.* § 134.203 (providing an appeal petition must contain a "clear and concise statement of the factual basis of the case and applicable legal arguments"). Plaintiff was also required to include in its appeal petition "with specific reference to the determination and the record supporting such determination, the reasons why the determination is alleged to be arbitrary, capricious or contrary to law." *Id.* § 134.402. Thus, the Court finds that the SBA regulations impose issue exhaustion requirements. *Forest View Rehab. & Nursing Ctr., LLC v. U.S. Small Bus. Admin.*, No. 24 CV 1490, 2024 WL 5247837, at *10 (N.D. Ill. Dec. 30, 2024) (finding the plaintiff's argument that the SBA exceeded its statutory authority to implement a rule was "forfeited, if not waived altogether" because the argument was not raised "in its opening brief to [the court] or to the OHA during the administrative review process"). And Plaintiff did not, in its appeal to the OHA, argue that the SBA's findings were arbitrary and capricious, either facially or as applied. (*See* AR 143–48.)

"Issue exhaustion is a jurisdictional requirement." *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 895 (9th Cir. 2021). "[I]f an exhaustion requirement is jurisdictional . . . . a

court 'has no authority to create equitable exceptions to jurisdictional requirements,'" including futility. *Id.* Thus, regardless of whether issue exhaustion would be futile, (*see* Pl.'s MSJ 14 (arguing that the OHA "itself has determined it lacks authority to invalidate SBA's interpretation of the law")), Plaintiff was required under SBA regulations to state "*all* . . . legal arguments," including why the SBA's determination was "arbitrary, capricious or contrary to law." 13 C.F.R. §§ 134.1204, 134.402. The Court, therefore, **DENIES** Plaintiff's MSJ, and **GRANTS** Defendants' MSJ as to Counts 3 and 4.

## IV.   CONCLUSION AND ORDER

Based on the foregoing reasons, the Court **DENIES** Plaintiff's MSJ as to Counts 2 through 4, and **GRANTS** Defendants' MSJ as to all Counts. Defendants will submit a proposed order entering final judgment to the Court's e-filing inbox within **seven (7) days** of entry of this Order. *See* Fed. R. Civ. P. 58.

**IT IS SO ORDERED.**

Dated: February 27, 2026

_____
Hon. Dana M. Sabraw
United States District Judge